UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 13-20618-CR-MORENO

UNITED STATES OF AMERICA

vs.

HECTOR ALONSO CANAVERAL MENDOZA,
a/k/a "Caña,"

Defendant.
_____/

## FACTUAL PROFFER

If this matter were to proceed to trial, the Government would prove the following facts beyond a reasonable doubt. The Parties agree that these facts, which do not include all facts known to the Government and the Defendant, HECTOR ALONSO CANAVERAL MENDOZA, are sufficient to prove the guilt of the Defendant of the above-referenced Indictment:

From August through December 2011, during a series of lawfully-intercepted telephone calls in Colombia, Galeano Escobar and Canaveral Mendoza discussed the purchase of a Piper 350 Panther Navajo aircraft, bearing United States registration N59777 (N59777), to transport approximately 800 kilograms of cocaine from Colombia to Honduras. According to the lawfully-intercepted communications and information provided by CS-2, N59777 was purchased by a DTO member. According to FAA records and information provided by a CS, in August 2011, N59777 was flown from the United States to Panama to prepare it for the smuggling venture.

CS stated that, on August 22 2011, five members of the DTO, including Galeano Escobar, Canaveral Mendoza, and Marin Gutierrez, traveled from Bogota, Colombia to Panama City, Panama to inspect N59777. CS, who was based in Panama, stated that CS was contacted by the

above-referenced defendants for assistance in avoiding law enforcement detection during the operation. CS met in person with Galeano Escobar, Canaveral Mendoza, Marin Gutierrez, and Alvarez Rodriguez to discuss the upcoming cocaine smuggling operation, to include how CS could provide assistance in bypassing radar in Panamanian airspace and obtaining approval for landing at a Panamanian airport. CS was also provided with the bill of sale of the N59777 during one of these meetings.

On October 13, 2011, during a lawfully-intercepted telephone call in Colombia, Galeano Escobar and Canaveral Mendoza discussed, among other things, the per diem and pilot expenses required for the venture; that Alvarez Rodriguez would recruit a second pilot; and that Alvarez Rodriguez was responsible for getting the plane ready for the cocaine smuggling operation since he was in Panama. Galeano Escobar requested that Canaveral Mendoza pay the DTO pilot, Marin Gutierrez, $50,000 Colombian pesos for his services.

On October 18, 2011, during a lawfully-intercepted telephone call in Colombia, Galeano Escobar, who was with Alvarez Rodriguez in Panama, gave Alvarez Rodriguez his telephone number so Alvarez Rodriguez could communicate with Canaveral Mendoza throughout the operation. During the conversation, Alvarez Rodriguez stated that he was waiting on a satellite telephone but assured Canaveral Mendoza that everything was ready to go. Canaveral Mendoza emphasized that the suppliers were anxious to get the load of cocaine moved to another location in order to avoid detection. Canaveral Mendoza asked if everything was arranged with CS-2 at the airport in Panama so that the cocaine-laden N59777 could arrive without law enforcement detection. Alvarez Rodriguez assured Canaveral Mendoza everything had been arranged to avoid law enforcement detection.

On December 7, 2011, during a lawfully-intercepted telephone call in Colombia, Canaveral Mendoza and Marin Gutierrez discussed expenses for the upcoming cocaine smuggling operation and the route that Marin Gutierrez would use to travel from Panama to Honduras. The two discussed travelling through Colombia and Venezuela for security reasons.

On December 11, 2011, during a lawfully-intercepted telephone call in Colombia, Galeano Escobar told another DTO member that he had 800 kilograms of cocaine in Necocli, Colombia ready for the cocaine smuggling operation.

In December 2011, Marin Gutierrez flew N59777 from Panama to Necocli, Colombia. Based on lawfully-intercepted telephone calls in Colombia, Marin Gutierrez was instructed to land in a clandestine airstrip in Necocli to load the aircraft with cocaine, and then fly to Central America. Lawfully-intercepted telephone calls revealed that during this attempt, N59777's engine overheated and the aircraft was forced to return to Panama without the cocaine.

WIFREDO A. FERRER
UNITED STATES ATTORNEY

Date: 1/26/16

By: _____
MONIQUE BOTERO
ASSISTANT UNITED STATES ATTORNEY

Date: 1/25/16

By: _____
LOUIS CASUSO
ATTORNEY FOR DEFENDANT

Date: 1/25/16

By: _____
HECTOR ALONSO CANAVERAL MENDOZA
DEFENDANT